IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KAMAL PATEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-08-1168-D |
| ) | |
| UNITED STATES OF AMERICA, *et al*., ) | |
| ) | |
| Defendants. ) | |

**O R D E R**

This matter is before the Court for review of the Report and Recommendation [Doc. No. 254] issued by United States Magistrate Judge Gary M. Purcell on February 19, 2009, pursuant to 28 U.S.C. § 636(b)(1)(B). Judge Purcell recommends rulings on Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment [Doc. No. 224] that are adverse to Plaintiff. Within the time period permitted by the Court, Plaintiff has filed a lengthy objection accompanied by a voluminous appendix of exhibits. The Court ordinarily would not consider new matter submitted for the first time in objection to a magistrate judge's report. For reasons stated in the Order of March 16, 2009, however, the Court authorized Plaintiff to submit with his objection "any arguments and evidence he wishes to present in opposition to summary judgment" in order to permit "an informed decision whether or not to accept the Report and Recommendation," which was issued without Plaintiff's summary judgment response. *See* Order 3/16/09 [Doc. No. 262] at 3. Thus, under the circumstances, the Court will consider Plaintiff's newly presented arguments. The Court must make a *de novo* determination of issues specifically raised by the objection, and may accept, modify or reject the recommended decision. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

Plaintiff does not object to Judge Purcell's description of the 5-year procedural history of the case, which is therefore adopted. When the file was received in this district on October 31, 2008, the operative pleading was the Amended Civil Complaint [Doc. No. 221] filed January 28, 2008, by counsel appointed to represent Plaintiff while the case was pending in North Carolina. The pleading states three claims: (1) a claim under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 *et seq.*, of medical negligence in the failure to provide Plaintiff with appropriate treatment for a ruptured distal biceps tendon that he suffered while confined at the Federal Transfer Center in Oklahoma City on May 15, 2001; (2) a *Bivens*[1] claim against individual federal employees who allegedly violated Plaintiff's constitutional rights by depriving him of medical treatment; and (3) a claim under the Privacy Act of 1974, 5 U.S.C. § 552a *et seq.*, of failing to maintain accurate records and utilizing a false transfer request that caused Plaintiff to be negligently transferred and denied timely medical treatment.[2]

## Privacy Act

Judge Purcell recommends dismissal of the Privacy Act claim, which alleges a violation of § 552a(e)(5) and seeks damages under § 552a(g)(1)(C), because the Inmate Central Record System and inmate records maintained by the Bureau of Prisons (BOP) are exempt from those provisions. *See* 28 C.F.R. § 16.97(a), (j). Plaintiff objects to this finding on the ground that his claim concerns a record created in 2001 and the regulations exempting inmate records were not promulgated until 2002. Plaintiff is correct that the exemption of the Inmate Central Record System from the accuracy

---

[1] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971).

[2] Contrary to argument in Plaintiff's objection, his pleading does not contain a separate "negligent transfer" claim. The Amended Civil Complaint filed by counsel supersedes Plaintiff's prior pro se pleading, and any omitted claims are effectively withdrawn. *See Davis v. TXO Production Corp.*, 929 F.2d 1515, 1517 (10th Cir. 1991); *see Enderwood v. Sinclair Broadcast Group, Inc.*, 233 F. App'x 793, 800 (10th Cir. 2007) (plaintiff abandoned claim by filing amended complaint that omitted it); *see also Nisbet v. Van Tuyl*, 224 F.2d 66, 71 (7th Cir. 1955) ("The prior pleading is in effect withdrawn as to all matters not restated in the amended pleading . . . .").

provision of § 522a(e)(5) post-dates the allegedly false record. *See* Privacy Act of 1974, 67 Fed. Reg. 51,754-01 (Aug. 9, 2002) (codified at 28 C.F.R. § 16.97(j)). Before that date, the Inmate Central Record System was exempt only from the amendment provision of § 522a(d)(4) and the remedy provision of § 552a(g). *See* 28 C.F.R. § 16.97(a). During this time, when BOP had no duty to amend an inaccurate record but did have a duty to maintain accurate records, courts reconciled this apparent inconsistency by holding that the agency merely had a duty to address the accuracy of the record at some point before using it to make a determination adverse to the individual. *See Deters v. United States Parole Comm'n*, 85 F.3d 655, 658 n.2 (D.C. Cir. 1996); *see also Fendler v. United States Bureau of Prisons*, 846 F.2d 550, 554 (9th Cir. 1988) (pre-2002 regulation did not exempt BOP from § 552a(e)(5) or suit for damages under § 552a(g)(1)(C)). Thus, at the time of the BOP's alleged failure to maintain an accurate record in 2001, Plaintiff's sole remedy was a Privacy Act claim for damages that requires proof of an inaccurate record, an adverse determination, willful intent by the agency, and proximate causation. *See Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 583 (D.C. Cir. 2002); *see also Gowan v. United States Dep't of Air Force*, 148 F.3d 1182, 1192 (10th Cir. 1998).

Defendants argue in their Motion, as an alternative basis for summary disposition of Plaintiff's Privacy Act claim, that Plaintiff cannot establish the elements of such a claim. *See* Motion [Doc. No. 225] at 13 n.8. In so doing, they simply adopt arguments previously presented in a memorandum filed on July 17, 2006, while the case was pending in the Eastern District of Arkansas [Doc. No. 210-21]. In his objection, Plaintiff similarly incorporates his previously filed "responses and surreplies as well as all exhibits." *See* Pl.'s Objection [Doc. 263] at 25. It does not appear from the record that any court presiding over this case has previously considered these

arguments. Thus, the Court will re-refer this matter to Judge Purcell to further address the Privacy Act claim.

### *Bivens* Claim

After Defendants' dispositive motion was filed, Plaintiff moved voluntarily to dismiss the *Bivens* claim, which motion was granted. *See* Order 11/7/08 [Doc. No. 237]. Accordingly, Judge Purcell recommends that Defendants' motion to dismiss this claim should be denied as moot. No party has timely objected to this portion of Judge Purcell's Report, and thus further review of the recommended decision is waived. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *see also United States v. 2121 East 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996). Therefore, the recommended ruling will be adopted.

### FTCA Claim - Medical Negligence

Judge Purcell recommends dismissal of Plaintiff's FTCA claim with respect to all defendants other than the United States, and recommends summary judgment on the claim against the United States due to a lack of medical evidence to establish that the appropriate standard of care was breached, as required by Oklahoma and Texas law, or that any breach of that standard caused any substantial injury to Plaintiff. Plaintiff objects only to the summary judgment recommendation. Thus, Plaintiff has waived further review of the recommendation to dismiss the FTCA claim against all defendants other than the United States, and that recommendation will be adopted.

Plaintiff argues in objection to Judge Purcell's analysis of the medical malpractice claim that state law requirements should not apply to a federal claim and that he has been deprived of an opportunity to present expert evidence because his requests to appoint an expert have been denied. In an FTCA case, the substantive law to be applied is the law of the state where the conduct occurred. *See Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1117 (10th Cir. 2004); 28 U.S.C.

§ 1346(b)(1). Here, Plaintiff alleges medical negligence in the failure to provide timely surgical treatment of a ruptured tendon while he was confined in federal facilities in Oklahoma and Texas. Therefore, Oklahoma and Texas laws apply to his malpractice claim.[3] Judge Purcell notes that although expert testimony is ordinarily required, in Oklahoma "evidence of medical standard in the community may be established by testimony of the defendant physician." *See Roberson v. Jeffrey M. Waltner, M.D., Inc.*, 108 P.3d 567, 569 (Okla. Civ. App. 2005). Accordingly, in addressing the merits of Plaintiff's claim, Judge Purcell considers the medical opinions and evidence in the BOP record and the opinion expressed by the government's expert in the affidavit of Dr. Earl Peeples to conclude that Plaintiff has failed to show his treatment was below acceptable medical standards of care and caused him actual injury.[4]

In his objection, Plaintiff does not reference Judge Purcell's Report but seems generally to disagree with the conclusion that Plaintiff's treatment was consistent with medical standards. He makes no specific objection to Judge Purcell's findings that summarize and discuss Plaintiff's medical treatment records. Thus, absent a timely objection to this portion of Judge Purcell's Report, the Court finds that Plaintiff has waived further review and adopts in full Judge Purcell's findings regarding Plaintiff's medical records. *See* Report [Doc. 254] at 11-12.

Plaintiff argues that the acceptable standard of care is surgical repair of a ruptured tendon within 60 days, as shown by medical journals and published sources submitted with his objection

---

[3] *As discussed below, the alleged standard of care asserted by Plaintiff requires surgical treatment within 60 days, and this 60-day period would have expired within days after Plaintiff was transferred to Texas. Thus, the alleged conduct or omission presumably occurred in Oklahoma where BOP officials failed to provide surgical treatment before transferring Plaintiff. Accordingly, the Court cites Oklahoma case law.*

[4] *Plaintiff objects to any reliance on Dr. Peeple's affidavit and has filed a separate motion to strike this affidavit and others submitted by Defendants. [Doc. No. 265.] Plaintiff has previously filed a similar motion while the case was pending in the Eastern District of Arkansas, which was denied. See Order filed April 6, 2007 [Doc. No. 210-123]. The Court also denies the current motion as lacking merit.*

(Pl.'s App. at 2-15), as stated in his medical records (Pl.'s App. at 86 (a rupture "should have been surgically repaired first 60 days after injury")), and as admitted by Defendant during discovery (Pl.'s App. at 52 ("the optimal time for surgery is within the first 60 days")).  Plaintiff also moves, again, for appointment of a medical expert to assist him[5] and moves for an order requiring BOP officials to allow a privately retained physician to examine him.  The Court agrees with the ruling of Judge Purcell in his Order of November 7, 2008 [Doc. No. 237], which Plaintiff did not timely challenge, that denied Plaintiff's prior motion to appoint an expert.  Because Plaintiff has an extensive medical file, appointment of an expert to further examine Plaintiff is not needed.  Further, as to Plaintiff's new request seeking to compel prison administrators to permit a private examination, the Court declines to interfere in matters of prison administration.

Upon review of the case file, the Court finds that Plaintiff has presented evidence of medical opinions that anatomic or operative treatment of a distal biceps tendon rupture achieves the "best" or "optimal" results and is recommended to avoid significant deficits in forearm supination and elbow flexion.  The Court assumes solely for purposes of ruling on Defendants' motion that this view represents a community standard of care.  After review of Plaintiff's voluminous medical records, however, the Court finds that Plaintiff has presented no evidence to suggest that his lack of surgical treatment caused deficits of the sort that surgery serves to avoid.

---

[5] *The Court acknowledges Plaintiff's position that this motion presents different arguments and new reasons, that is, as a sanction of defense counsel's alleged misconduct of obtaining an independent medical examination on November 30, 2004, without notice that it was for the purpose of litigation and without a court order, as required by Fed. R. Civ. P. 35.  However, the physician's report shows that this examination was not directed solely at Plaintiff's claim in this case but was prompted by a chief complaint of "[p]rogressive weakness and numbness in the left arm."  See Pl.'s Motion [Doc. No. 270], Ex. 2.  Id., Ex. 1.*

6

Despite a lack of surgical treatment,[6] the first MRI of Plaintiff's right biceps tendon on January 17, 2002, showed "mild, about 1 cm proximal retraction;" the impression was "avulsion with slight retraction of the biceps tendon attachment to the radial tuberosity." Pl.'s App. at 90. Plaintiff was examined on April 1, 2002, by Dr. H Osoro for a complaint, among others, of right "forearm pain after he was doing pushups," and Dr. Osoro observed full range of motion in Plaintiff's right elbow and normal grip strength. *See* Def.'s Sealed Ex. 8 (Medical Records, vol. 1, at 00425-26). In an evaluation by an orthopedist, Dr. Robert Hayes, on March 23, 2003, Plaintiff was found to have "a defect distally at his biceps tendon with the loss of the distal biceps tendon as it attaches into the radius" but "a strength which is equal to the opposite side and full range of motion of his right elbow, shoulder, and wrist," as well as "good grip strength." Def.'s Sealed Ex. 8 (Medical Records, vol. 2, at 00596). The recommended treatment was "to avoid heavy lifting and work above his head. No surgery [was] indicated." *Id*. Similarly, in a subsequent orthopedic examination for purposes of a disability rating (not treatment) on November 30, 2004, Dr. Gregory Wolf found that Plaintiff's "biceps tendon is not as palpable on the right side as it is on the left" but that he had "completely normal flexion and extension strength of the [right] elbow with strong

---

[6] *The chronology of facts presented by Plaintiff shows that he was examined on the date of injury by FTC medical staff and referred to an orthopedic specialist. On July 6, 2001, an Oklahoma City orthopedic surgeon, Dr. John Hughes, examined Plaintiff and made a preliminary diagnosis of a rupture of the right distal biceps tendon and recommended an MRI of the right elbow and surgical repair if the diagnosis was confirmed. Three days later, Plaintiff was transferred to the BOP facility in Bastrop, Texas. Thus, the transfer occurred before the surgeon's report was received by the FTC physician, Dr. Goforth. See Pl's Objection [Doc. 263] at 12, ¶ 8; App'x, Ex. 14 (stamped received July 12, 2001, by Tom F. Goforth, MD, FTC Oklahoma City). Dr. Hughes' report was forwarded to the health services unit at Bastrop. See id. (stamped received Aug. 2, 2001, at "H.S.U." Bastrop, TX). Plaintiff was examined at Bastrop and was to be scheduled for an orthopedic evaluation, but before it took place he was transferred to Beaumont, Texas, for unrelated reasons. Once in Beaumont, Plaintiff received an orthopedic evaluation and an MRI of his right elbow.*

*Plaintiff's medical records reflect that he received medical care on October 30, 2001, and January 31, 2002, for complaints of pain in his neck and right elbow. The recommended treatment for his elbow was range of motion exercises and physical therapy. See Def.'s Sealed Ex. 8 (Medical Records, vol. 2, at 00634, 00636). Similarly, the treatment subsequently prescribed on April 1, 2002, by Dr. H. Osoro was physical therapy. Id. at 00623.*

pronation and supination." Pl.'s App. at 117. Dr. Wolf concluded that no impairment rating with respect to Plaintiff's upper right extremity was appropriate because "he ha[d] full range of motion, full motor, and sensory function." *Id.* at 119.

Most recently, Plaintiff received another orthopedic evaluation for his chronic right biceps tendon rupture on August 14, 2006. In this examination, Dr. Samuel Stanley observed "an obvious clinical deformity" and noted Plaintiff "reports some weakness" but "[m]anual testing is difficult today as he has more global weakness on the left side [due to unrelated medical conditions] and it's hard to compare his right to his left because of this." *Id.* at 113. Dr. Stanley further observed that Plaintiff "generally has good elbow flexion/extension, pronation and supination." According to Dr. Peeples, an orthopedist who reviewed Plaintiff's entire medical file, "[g]lobal weakness is a nonanatomic distribution and reflects deliberate effort by the individual to affect the outcome of the exam." *Id.* at 115. Also, contrary to Plaintiff's argument, Dr. Stanley did not recommend surgery but, instead, recommended an "MRI of the right arm and elbow" to give "a better idea whether or not surgery is at all feasible." *Id.* at 113.[7] In short, despite numerous volumes of medical records and repeated orthopedic consultations, Plaintiff points to no medical finding that he has significant deficits in supination or flexion due to a lack of surgical repair of his right biceps tendon rupture.

Therefore, upon independent examination of the record and the facts and arguments presented by Plaintiff in opposition to summary judgment, the Court concurs in Judge Purcell's conclusion that Plaintiff has failed to produce expert testimony to support his claim of negligence and has failed to identify facts to support an essential element of his FTCA claim of medical

---

[7] *Plaintiff received the recommended MRI but not a second consultation with Dr. Stanley. The materials submitted by Plaintiff do not reveal why this was so; they do not support his assertions that he did not receive a surgical referral due to interference by Dr. Peeples or that his "medical treatment was manipulated to support the defenses in this case." Pl.'s Objection [Doc. 263] at 14.*

negligence. Specifically, the Court finds that Plaintiff has not controverted the medical records showing that he has suffered no injury as a proximate result of the lack of surgical treatment of his biceps tendon rupture. Because Plaintiff has not demonstrated a genuine dispute of material fact with regard to an essential element of his FTCA claim, summary judgment on this claim is appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[8]

## Motion to Reinstate Privacy Act Claim

With his objection to the Report, Plaintiff has filed a Motion to Reinstate Privacy Act Claim Regarding Communication with the Press Based on Proof of Exhaustion [Doc. No. 269]. Plaintiff asks the Court to revisit an order entered February 9, 2006, in the Eastern District of Arkansas [Doc. No. 101-71] that adopted a magistrate judge's recommendation and dismissed another Privacy Act claim without prejudice for lack of administrative exhaustion. The dismissed claim involved a memorandum dated November 13, 2003, regarding correspondence Plaintiff mailed to the *Dallas Morning News*. The memorandum allegedly violates a provision of the Privacy Act, § 552a(e)(7) that prohibits maintaining a record "describing how any individual exercises rights guaranteed by the First Amendment." Plaintiff submits documents to show that, contrary to the magistrate judge's finding, the claim was actually exhausted and should have been allowed to proceed. Plaintiff does not mention, but a review of the case record reveals, that he previously presented similar arguments in a Motion to Reconsider, in Part, Order Adopting Magistrate's Report in Entirety in Light of Exhaustion, filed February 21, 2006 [Doc. No. 101-74], which was denied by the Order of June 9, 2006 [Doc. No. 210-3].

---

[8] *Plaintiff has not "set forth specific facts" identified by reference to affidavits, discovery materials, or specific exhibits that show the existence of a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(2); see also Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 671 (10th Cir. 1998).*

negligence. Specifically, the Court finds that Plaintiff has not controverted the medical records showing that he has suffered no injury as a proximate result of the lack of surgical treatment of his biceps tendon rupture. Because Plaintiff has not demonstrated a genuine dispute of material fact with regard to an essential element of his FTCA claim, summary judgment on this claim is appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[8]

## Motion to Reinstate Privacy Act Claim

With his objection to the Report, Plaintiff has filed a Motion to Reinstate Privacy Act Claim Regarding Communication with the Press Based on Proof of Exhaustion [Doc. No. 269]. Plaintiff asks the Court to revisit an order entered February 9, 2006, in the Eastern District of Arkansas [Doc. No. 101-71] that adopted a magistrate judge's recommendation and dismissed another Privacy Act claim without prejudice for lack of administrative exhaustion. The dismissed claim involved a memorandum dated November 13, 2003, regarding correspondence Plaintiff mailed to the *Dallas Morning News*. The memorandum allegedly violates a provision of the Privacy Act, § 552a(e)(7) that prohibits maintaining a record "describing how any individual exercises rights guaranteed by the First Amendment." Plaintiff submits documents to show that, contrary to the magistrate judge's finding, the claim was actually exhausted and should have been allowed to proceed. Plaintiff does not mention, but a review of the case record reveals, that he previously presented similar arguments in a Motion to Reconsider, in Part, Order Adopting Magistrate's Report in Entirety in Light of Exhaustion, filed February 21, 2006 [Doc. No. 101-74], which was denied by the Order of June 9, 2006 [Doc. No. 210-3].

---

[8] *Plaintiff has not "set forth specific facts" identified by reference to affidavits, discovery materials, or specific exhibits that show the existence of a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(2); see also Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 671 (10th Cir. 1998).*

The Court declines to reconsider these prior decisions of a transferor court. "[T]raditional principles of law of the case counsel against the transferee court reevaluating the rulings of the transferor court . . . ." *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991). Nevertheless, a ruling of the transferor court "may be reconsidered when the governing law has been changed by the subsequent decision of a higher court, when new evidence becomes available, when a clear error has been committed or to prevent manifest injustice." *Id.* (citations omitted). Plaintiff does not contend that any of these circumstances are present here, and it does not appear to the Court that any apply. Although Plaintiff cites an intervening decision of the Supreme Court, *Jones v. Bock*, 549 U.S. 199 (2007), regarding the burden of proof as to administrative exhaustion, he does not explain its impact on the earlier ruling. Also, while he submits a discovery response by Defendants after February 6, 2006, it is unclear how, if at all, the admission bears on the exhaustion issue decided by the February 6 Order. Thus, the Court finds that Plaintiff has failed to justify his request for reconsideration of the dismissal order.

Further, the Court is particularly reluctant to reinstate a Privacy Act claim that was dismissed without prejudice more than three years ago and concerns a memorandum written in 2003. Because the dismissal was without prejudice and the claim was unrelated to the remaining issues in this case, Plaintiff could have brought a separate civil action and presented his additional proof of exhaustion. Instead, Plaintiff took no action to pursue his claim in a timely manner. "Congress waived the sovereign immunity of the United States when it enacted the Privacy Act but imposed a two-year statute of limitations. The statute of limitations qualifies the waiver of sovereign immunity and constitutes a limitation on subject matter jurisdiction." *Harrell v. Fleming*, 285 F.3d 1292, 1293 (10th Cir. 2002) (internal quotation omitted); *see* 5 U.S.C. § 522a(g)(5). The Court finds it

inconsistent with Congress' purpose in providing civil remedies under the Privacy Act to permit an individual to bring a private action years later under these circumstances.

## Conclusion

For the reasons set forth above, the Court adopts the Report and Recommendation issued by Judge Purcell on February 19, 2009, as modified by this Order, with respect to all claims and issues except Plaintiff's claim under the Privacy Act.

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [Doc. No. 224] is GRANTED in part, DENIED in part, and RESERVED in part as follows:

- The Motion is granted with respect to Plaintiff's FTCA claim. Defendants are entitled to the dismissal of the FTCA claim as to all named defendants other than the United States and to summary adjudication under Fed. R. Civ. P. 56 of the FTCA claim against the United States;

- The Motion is denied as moot with respect to Plaintiff's *Bivens* claims, which were previously dismissed; and

- A ruling on the Motion is reserved with respect to Plaintiff's Privacy Act claim based on the June 1, 2001, transfer request. The matter will be re-referred to Judge Purcell for further consider of the parties' summary judgment submissions regarding this claim.

IT IS FURTHER ORDERED that the Court rules on various motions filed by Plaintiff as follows:

- Plaintiff's Motion for Leave to File Out of Time Reply to Defendants' Motion for Summary Judgment [Doc. No. 258] is GRANTED to the extent that the materials submitted by Plaintiff have been considered by the Court in its summary judgment ruling and may be considered by Judge Purcell.

- Plaintiff's Motion to Strike Defendants' Summary Judgment Proof [Doc. No. 265] is DENIED.

- Plaintiff's Motion for Time to Obtain Expert Report and Order from This Court Requiring Prison Officials to Permit Plaintiff to Retain an Expert [Doc. No. 267] is DENIED.

- Plaintiff's Motion to Reinstate Privacy Act Claim Regarding Communication With the Press Based on Proof of Exhaustion [Doc. No. 269] is DENIED.

- Plaintiff's Motion Under FRE 706(a) and (b), Fed. R. Civ. P. 37 and/or 56 for Appointment of a Medical Expert and to Sanction Defendants [Doc. No. 270] is DENIED.

This matter is re-referred to Judge Purcell to address the reserved issues and for further proceedings, as he deems appropriate, pursuant to 28 U.S.C. § 636(b)(1).

IT IS SO ORDERED this   14th   day of May, 2009.

_____
TIMOTHY D. DEGIUSTI
UNITED STATES DISTRICT JUDGE