IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

KAMAL K. PATEL,                          )
                                         )
                    Plaintiff,           )
                                         )
                                         )      CIV-08-1168-D
v.                                       )
                                         )
UNITED STATES DEPARTMENT OF  )
JUSTICE, BUREAU OF PRISONS,   )
                                         )
                    Defendants.          )

SUPPLEMENTAL REPORT  AND  RECOMMENDATION

        The extensive procedural history of this action is well known to the parties and will

not be fully recited herein.[1] The matter has been referred to the undersigned Magistrate Judge

for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B).  The remaining issue before

the Court is Plaintiff's allegation in his Amended Complaint filed January 28, 2008, that his

rights under the Privacy Act, 5 U.S.C. § 552a *et seq.*, were violated by Defendants.

Defendants have moved for summary judgment pursuant to Fed. R. Civ. P. 56 concerning

_____

        [1]The procedural history was summarized in the Report and Recommendation entered by the
undersigned on February 19, 2009. (Doc. # 254).  The Report and Recommendation was adopted
in part and denied in part by District Judge DeGiusti in the Order entered May 14, 2009. (Doc.
#273).

this remaining claim, and Plaintiff has responded to the Motion for Summary Judgment.[2] For the following reasons, it is recommended that Defendants' Motion for Summary Judgment be granted.

I. <u>Motion to Stay Proceedings</u>

This action has been pending for over five years, having been transferred to three different courts, and has generated more than 300 pleadings and numerous exhibits. Despite the enormous effort and length of time previously spent by the parties litigating this matter, Plaintiff filed a motion on August 31, 2009, seeking to "stay" the action. (Doc. # 299). As reasons for imposing an administrative stay, Plaintiff stated he was being transferred "to court in Texas and doesn't have any addresses to provide the court and he is separated from legal papers during such transit." (Doc. # 299). The motion was denied. (Doc. # 301). However, the last two Orders entered in this case have been returned to the Court marked "Undeliverable," and Plaintiff has not responded to Defendants' Supplement to their Motion for Summary Judgment within the prescribed time limit.

As evidentiary support for the motion to "stay," Plaintiff submitted with the motion a photocopied page from a court docket sheet indicating Plaintiff was scheduled to appear at the United States District Court located in Abilene, Texas, in Case No. 1:05-CV-225, on

---

[2]In their Motion, Defendants adopt by reference the Memorandum in Support of Motion for Summary Judgment concerning Plaintiff's Privacy Act claim filed July 17, 2006, in the United States District Court for the Eastern District of Arkansas. (Docs. # 286 and 210, Ex. 20). Defendants have supplemented their Motion to include a statement of undisputed facts (Doc. # 296) and filed supporting exhibits under seal. (Docs. # 297 and 298).

October 6, 2009, for a pretrial conference. (Doc. # 299, Ex. 1). The docket sheet in that case, Patel v. Thompson. No. 1:05-CV-225-BI, reflects that an order was entered on September 24, 2009, vacating the pretrial conference previously scheduled for October 6, 2009, with the conference to be reset at a later date.   The impetus for rescheduling the pretrial conference appears to have been Plaintiff's letter addressed to the presiding judge in which Plaintiff stated he was being detained in Raleigh, North Carolina "on a writ to testify in North Carolina and separated from [his] papers." https://ecf.txnd.uscourts.gov (docket sheet in Patel v. Thompson, No. 1:05-CV-225-BI, accessed through PACER, the electronic docket system run by the Administrative Office of the United States Courts, on October 1, 2009).

Plaintiff recently entered a guilty plea in the United States District Court for the Eastern District of North Carolina to one count of an indictment charging Plaintiff with conspiracy to bribe a public official in United States v. Owens, et al., Case No. 5:09-CR-00004-BR-6.  https://ecf.nced.uscourts.gov (docket sheet accessed through PACER on October 1, 2009).  The indictment in that case charged Plaintiff and six inmate co-defendants with conspiring with a federal correctional official to bring contraband into the Federal Correctional Center in Butner, North Carolina and to resell the contraband to other inmates for profit.   The overt acts charged in the indictment occurred from 2005 through 2007. Plaintiff's sentencing in this case is scheduled for December 7, 2009.

Plaintiff has not notified this Court of a change in his address, and Plaintiff has failed to comply with this Court's procedural rules requiring him to provide the Court with an accurate mailing address.   In the absence of notice of a change in his address, the Court has

3

no obligation to provide Plaintiff with further opportunity to respond to Defendants'

Supplement to their Motion for Summary Judgment.

II. <u>Privacy Act Claim</u>

The Privacy Act requires that an agency "maintain all records which are used by the

agency in making any determination about any individual with such accuracy, relevance,

timeliness, and completeness as is reasonably necessary to assure fairness to the individual

in the determination."  5 U.S.C. § 552a(e)(5).  To prevail on Plaintiff's claim for damages

for a violation of the Privacy Act, Plaintiff must demonstrate (1) that the agency failed to

maintain records with the degree of accuracy necessary to assure fairness in the

determination, (2) that the agency acted willfully or intentionally in failing to maintain

accurate records, and (3) that, as a result of the agency's reliance on the allegedly inaccurate

records, the Plaintiff suffered an "adverse" determination. 5 U.S.C. §§ 552a(g)(1)(C); (g)(4).

<u>See</u> <u>Gowan v. U.S. Dep't of Air Force</u>, 148 F.3d 1182, 1192 (10th Cir. 1998)(quotation

omitted); <u>Sellers v. Bureau of Prisons</u>, 959 F.2d 307 (D.C. Cir. 1992)("As long as the

information contained in an agency's files is capable of being verified, then, under sections

(e)(5) and (g)(1)(C) of the [Privacy] Act, the agency must take reasonable steps to maintain

the accuracy of the information to assure fairness to the individual.  If the agency wilfully

or intentionally fails to maintain its records in that way and, as a result, it makes a

determination adverse to an individual, then it will be liable to that person for money

damages.").

In his Amended Complaint filed January 28, 2008, in the United States District Court

for the Eastern District of North Carolina, Plaintiff alleges that Defendants United States Department of Justice ("DOJ") and Bureau of Prisons ("BOP")[3] have maintained an inaccurate record in BOP's Inmate Central Record System. Plaintiff refers to a memorandum in which correctional officials at the Federal Transfer Center in Oklahoma City, Oklahoma ("FTC") requested on June 1, 2001, that Plaintiff be transferred from FTC to another correctional facility in Texas. Plaintiff alleges this transfer memorandum contains "materially false information...." Amended Complaint, at 14-15 (Doc. # 221). Specifically, Plaintiff alleges that BOP "falsely indicated that Plaintiff had no medical conditions which would obstruct his transfer to a different correctional facility" despite BOP's "knowledge of Plaintiff's [right distal biceps tendon] injury and need for expedient medical treatment." The transfer request was made, according to Plaintiff's allegations, when "FTC OKC officials knew full well of the necessity for timely surgical repair of Plaintiff's injury; that such transfer would inevitably delay Plaintiff's receipt of medical treatment; and that such delay could cause permanent and irreparable injury to Plaintiff." Plaintiff also alleges that BOP "falsely indicated within the transfer application that Plaintiff missed multiple days from work in order to further his own legal matters" and "falsely stated within the transfer application that Plaintiff was constantly requesting to use the law library." Amended Complaint, at 8. Plaintiff also alleges that statements contained in the transfer request

---

[3]A Privacy Act claim may be brought only against an agency, not against an individual. Connelly v. Comptroller of the Currency, 876 F.2d 1209, 1215 (5th Cir. 1989); Ramirez v. Dep't of Justice, 594 F. Supp. 2d 58, 61-62 (D.D.C. 2009).

memorandum concerning Plaintiff's behavior at FTC are false.  As a result of the alleged inaccuracies in this document, Plaintiff asserts that  he was permanently injured.  Plaintiff describes this injury as "a permanently deformed biceps muscle, permanent weakness in his right arm, loss of proper functioning of the arm, and .... physical, mental and emotion [sic] anguish from these permanent harms."

III. Standard of Review

Summary judgment may be granted only where the pleadings and documentary materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In considering a motion for summary judgment, the court reviews the evidence and inferences drawn from the record in the light most favorable to the nonmoving party.  Jiron v. City of Lakewood, 392 F.3d 410, 414 (10th Cir. 2004).  A dispute is "genuine" if a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "Material facts" are "facts which might affect the outcome of the suit under the governing law."  Id. Additionally, if the moving party demonstrates an absence of evidence regarding an issue on which the nonmoving party will bear the burden of proof at trial, the nonmoving party can defeat summary judgment only by designating with evidence outside of the pleadings "specific facts showing that there is a genuine issue for trial."  Celotex Corp.

v. Catrett, 477 U.S. 317, 322 (1986).[4]

IV. Undisputed Facts

Although Plaintiff was advised of his opportunity to respond to Defendants'
Supplement to Motion for Summary Judgment on Privacy Act Claim, which includes a
Statement of Undisputed Facts (conventionally filed herein on August 21, 2009), on or before
September 4, 2009, to this date Plaintiff has not responded to the Supplement or specifically
controverted the Defendants' Statement of Undisputed Facts contained in the Supplement
to Motion for Summary Judgment on Privacy Act Claim. (Doc. # 296).   However, in
Plaintiff's Reply (Doc. # 210, Ex. 92), Plaintiff disputes some statements contained in
Defendants' Statement of Undisputed Facts filed July 17, 2006 (Doc. # 210, Ex. 21).   Thus,
the Plaintiff's previously-filed Reply has been considered as responsive to Defendants'
Statement of Undisputed Facts submitted with respect to their most recent Motion for
Summary Judgment.

The following material facts are undisputed for the purpose of resolving Defendants'
Motion for Summary Judgment:

1. The FTC in Oklahoma City serves as the central hub for the majority of all federal inmate
movements across the country.   Approximately 400 inmates are transported into and out of
this facility on a daily basis.   The average population of 1,500 inmates consists mostly of

---

[4]In a prisoner civil rights case such as this one, the plaintiff's complaint is treated as an
affidavit if it allege facts based on the plaintiff's personal knowledge and has been sworn under
penalty of perjury. Hall, 935 F.2d at 1111.

"holdover" inmates who are being transferred between federal correctional facilities. Approximately 170 of the 1,500 inmates assigned to FTC are designated work cadre inmates.

2.  Inmates designated to the FTC work cadre are generally low security level inmates authorized to perform various work assignments at secure facilities without satellite camps.

3.  The "holdover" inmates are held at FTC for a short time while in transit and confined to the secure housing units.  Because of the limited number of work cadre inmates assigned and allocated throughout numerous areas of the FTC, such as food service, laundry, electrical, etc., it is critical for the work cadre inmates to work on a consistent and regular basis.

4.  The correctional staff at FTC do not accommodate the inmates' various programming needs in the same manner as a normal federal correctional institution housing inmates designated to that institution.

5.  Although the work cadre inmates' housing unit has a basic law library that can be used at any time by the inmates assigned to the unit, the library is not as extensive as the main law library at FTC.

6.  Inmates at FTC can access legal resources at the main law library by submitting a request known as a "cop-out," and the requested material is either copied and delivered to the inmate or the bound material is loaned to the inmate for a specific period of time.  Plaintiff used this "cop-out" process frequently during his confinement at FTC.

7.  Inmates at FTC cannot access the main law library on their own due to the security of the facility and the fact that movement from one floor of the facility to another is accomplished through use of secured elevators.  Inmates are not allowed out of the units or allowed on the

8

elevators at FTC without staff escort.  If inmates have imminent court deadlines and need time in the main law library, they can submit a request to the education department, and the inmate may be scheduled for escorted access to the main law library.

8.  There is no record or log maintained of inmate requests for physical access to the main law library.

9. Plaintiff was designated to FTC from December 6, 2000 to July 9, 2001, as part of the FTC work cadre.

10.  During his confinement at FTC, Plaintiff had pending lawsuits and sought to be allowed physical access to the law library on numerous occasions.[5]

11.  No record is maintained of the days inmates miss work at FTC except on the inmates' pay sheets.  These pay sheets are destroyed after progress reports are prepared every six months.  Therefore, there is no record of the dates Plaintiff missed work while he was confined at FTC.

12.  FTC officials stated on the transfer request memorandum that Plaintiff would benefit from a facility that had a more traditional inmate law library accessible to him during non-working hours, and FTC officials recommended that Plaintiff be transferred to a traditional federal correctional facility.

13.  A review of Plaintiff's medical records demonstrates he did not have any medical

---

[5]Although Plaintiff denies he had a number of pending legal actions on June 1, 2001, in his administrative grievance Plaintiff described having "pending court cases" at the time the transfer request memorandum was completed.

restrictions on June 1, 2006, although he was on "convalescent" status and temporarily

excused from his prison job between May 16, 2001 and June 28, 2001, when he returned to

work at FTC until his transfer to FCI Bastrop on July 9, 2001.

14.  At FTC Plaintiff was classified a "low security" level inmate and following his transfer

to FCI Bastrop Plaintiff was again classified a "low security" level inmate.

15.  Plaintiff injured his right biceps tendon playing handball on May 15, 2001, while he was

confined at FTC.

16.  After his transfer from FTC to FCI Bastrop, Plaintiff received medical care for his right

elbow injury by BOP health personnel and outside orthopedic consultants.  By March 2003,

a physician's progress note completed at the federal prison located in Big Spring, Texas,

indicated Plaintiff exhibited strength in the right arm that was equal to his left arm strength,

good grip strength, and full range of motion of his right shoulder, elbow, and wrist.

V. Analysis

Plaintiff was transferred to FTC on December 6, 2000.  The transfer request

memorandum completed by FTC Warden Morris and dated June 1, 2001, requested that

Plaintiff be transferred to one of three federal correctional facilities in Texas because Plaintiff

was

> in need of a facility with a traditional law library.  He needs to
> be housed at a facility which does not have a work cadre
> mission structure.  He is constantly requesting use of the legal
> law library which is not operated in similar fashion [at FTC] as
> most facilities.  As we are a work cadre, our primary mission is
> to provide a work force for the institution and legal work is
> considered secondary.  He frequently requests time away from

> his work detail to prepare legal documents to present to the
> court. The Executive Staff at this facility feels strongly that he
> should be transferred to a more traditional FCI.

Memorandum in Support of Motion to Dismiss or in the alternative, Motion for Summary

Judgment (Doc. # 101, Ex. 22, at Ex. 2).   The memorandum states that with respect to

Plaintiff's medical status he was "considered regular duty with no medical restrictions." Id.

The memorandum also notes that in terms of his institutional adjustment Plaintiff was

"considered a prime consumer of staff time," "involved in numerous legal actions," and was

"normally argumentative with staff and border line insolent regarding his access to the courts

and ability to utilize the law library." Id. Plaintiff's transfer from FTC to another facility was

approved by BOP, and Plaintiff was transferred on July 9, 2001, to the Federal Correctional

Institution in Bastrop, Texas ("FCI Bastrop").

In Plaintiff's request for administrative relief concerning his transfer from FTC to FCI

Bastrop, Plaintiff complained that he was transferred "in retaliation for my request to visit

the law library to do reserach [sic] for pending court cases and to meet a statute of limitations

deadline." Id. (Doc. # 101, Ex. 22, at Ex. 1).   In response to the administrative remedy

request, Plaintiff was advised by FCI Bastrop officials that

> FTC Oklahoma City has a large number of holdover inmates and
> a small work cadre. The inmates on the work cadre must be in
> good health and must be available to work on the various details
> with few interruptions. You presented numerous medical
> problems to the institution's Health Services staff, were placed
> on medical idle five times, and missed 37 days of work during
> the seven months you were at that institution. Therefore, you
> were transferred to our facility to meet your needs.

11

Id.  Plaintiff repeated this complaint in his appeal of the response.  Id.  In response to this grievance, Plaintiff was advised that "[t]he primary mission of FTC Oklahoma is to house inmates en route to other institutions or locations.  You were transferred from FTC Oklahoma to a general population institution that could better meet your programming needs.  In addition, you have greater access to institution programs and services."  Id.

Plaintiff seeks monetary relief with respect to his Privacy Act claim.  See 5 U.S.C. §551a(g)(1)(C), (g)(4)(permitting suit for damages if agency's violation of §552a(e)(5) results in determination adverse to the plaintiff).  Plaintiff also seeks to have the allegedly "fabricated transfer document" expunged from his BOP inmate record.

"[A]nalysis of the inaccurate records element of a Privacy Act claim depends on whether the truth underlying the challenged statements is clearly provable or relatively easily ascertainable."  Toolasprashad v. Bureau of Prisons, 286 F.3d 576, 583 (D.C. Cir. 2002)(internal quotations and citation omitted).  In "typical" cases, where truth can readily be ascertained, the district court must determine whether the recorded information is accurate.  Id.  In "atypical" cases where the truth is difficult to discern the court is not required to determine the accuracy of the recorded information.  Id. (internal quotations and citation omitted).  Thus, subjective statements by officials contained in agency documents that reflect opinions or judgments do not provide a basis for a cause of action under the Privacy Act.  See Toolasprashad v. Federal Bureau of Prisons, 281 Fed.Appx. 69, 70 (3rd Cir. 2007)(statements in transfer memo that inmate was harassing and demeaning toward staff members and that inmate's behavior was manipulative were opinions or judgments not

subject to review under Privacy Act).  Moreover, with respect to agency records, negligent or even grossly negligent conduct by administrative officials does not warrant relief under the Privacy Act.  See Deters v. United States Parole Comm'n, 85 F.3d 655, 660 (D.C. Cir. 1996)(to show willful or intentional failure to maintain record with sufficient accuracy to assure fairness in agency determination, agency must have acted with something greater than gross negligence and committed the act without grounds for believing it to be lawful or by flagrantly disregarding others' rights under Privacy Act).

Viewing the undisputed facts in the light most favorable to Plaintiff, a reasonable jury would not find that Plaintiff has shown a violation of the Privacy Act.  Plaintiff contends that FTC officials recommended his transfer to another prison with full knowledge of his need for timely surgical repair of his right biceps tendon injury, and Plaintiff contends that the transfer request was made by FTC officials in retaliation for his requests to use the law library at FTC.[6]  However, the transfer memorandum itself reflects that FTC officials were

---

[6]In his Reply to Defendants' Motion for Summary Judgment, Plaintiff has adopted his Reply filed February 27, 2007. (Doc. # 210, Ex. 88) in which Plaintiff attempted to add a new allegation concerning statements made by an FTC official, Mr. Regnier.  Plaintiff alleged that Mr. Regnier admitted to Plaintiff that the the transfer memorandum was submitted in retaliation for Plaintiff's use of the inmate grievance process at FTC.  Plaintiff did not present this allegation in his administrative grievance concerning the transfer from FTC to FCI Bastrop.  Nor did Plaintiff include this allegation in his Bivens action filed in this Court against FTC officials, including Mr. Regnier. Patel v. Regnier, Case No. 04-343-D. Taking judicial notice of the Court's own records in that case, Plaintiff alleged as he does in his Complaint herein that Defendants caused him to be transferred to a different correctional facility in retaliation for his seeking medical care, among other claims.  That action was dismissed due to Plaintiff's failure to exhaust administrative remedies.  Significantly, in another action filed in this Court, Plaintiff alleged in a pleading filed August 4, 2004, that information in his BOP inmate record concerning his alleged participation in an assault on another inmate in 1998 had been used as grounds for transferring Plaintiff to five different prisons between 2000 and 2004.  Patel v. Bureau of Prisons, Case No. CIV-00-1461-T (W.D. Okla.)(Doc. # 15,

recommending Plaintiff's transfer to a more traditional federal correctional facility in order to benefit, and not to retaliate against, him.

There is no evidence that FTC officials misstated on the transfer request memorandum that Plaintiff was "considered regular duty with no medical restrictions." (Doc. # 101, Ex. 22, at Ex. 2).   Plaintiff points to his work history compiled by BOP showing that he was placed on convalescent status on May 16, 2001, and again on May 24, June 7, June 14,and June 22, 2001.  Defendants' Exhibits to Supplement to Motion for Summary Judgment on Privacy Act Claim. (Doc. #298, Ex. 5).  This same work history document shows Plaintiff returned to work at FTC on June 28, 2001, and continued to work until his transfer to FCI Bastrop. Id. The work history document indicates that Plaintiff's convalescent status was temporary and Plaintiff has not shown that any doctor had placed permanent medical restrictions on his ability to work at the time the transfer request memorandum was completed by FTC officials. Indeed, Plaintiff's medical records reflect that he had some medical conditions at the time of his transfer from FTC to FCI Bastrop but that his medical conditions were not accompanied by physician treatment orders other than to continue his prescribed medications.   Defendants' Exhibits to Supplement to Motion for Summary Judgment on Privacy Act Claim.  (Doc. #298, Ex. 16).  A physician's assistant completed a BOP form dated July 6, 2001, concerning Plaintiff's medical status and noted that Plaintiff had diagnoses of degenerative joint disease of his cervical spine, a disk bulge in his cervical

---

Petitioner's Reply to Respondents' Request to Deny the Motion to Reopen, at 7).

spine, degenerative joint disease in his left ankle and right elbow pain, that Plaintiff was "pending [follow-up] by orthopedics for elbow problem," and that his medications were to be continued until he was reviewed by the receiving facility's physician. Id. On July 12, 2001, three days after Plaintiff had been transferred to FCI Bastrop, Dr. Tom Goforth at FTC received a report[7] from Dr. John Hughes of a consultative examination of Plaintiff conducted by Dr. Hughes on July 6, 2001. Dr. Hughes reported that MRI testing was needed to determine if Plaintiff's right biceps tendon had been ruptured, although the physician "suspect[ed]" that Plaintiff "probably has a rupture of the distal, right, biceps tendon" although "[i]t has not resulted in a lot of deformity of the muscle and he has adequate strength in the right arm." Id., Ex. 9. There is no evidence from which a jury could find that FTC officials were aware at the time the transfer request memorandum was completed on June 1, 2001, or at the time of his transfer on July 9, 2001, that Plaintiff had ruptured his right biceps tendon or that "expedient" surgical repair was needed to repair or prevent further damage to Plaintiff's right biceps tendon injury.

The subjective statements of FTC officials contained in the transfer request memorandum, including the statements that Plaintiff was "considered a prime consumer of staff time," was "normally argumentative with staff," and was "border line insolent regarding his access to the courts and ability to utilize the law library" are not evidence of a violation of the Privacy Act. Toolasprashad, 281 Fed.Appx. at 70.

---

[7]The report contains a date stamp reflecting that Dr. Goforth received the report at FTC on July 12, 2001.

FTC officials also stated in the transfer request memorandum dated June 1, 2001, that Plaintiff was "involved in numerous legal actions," "constantly request[ed] use of the legal law library," and "frequently request[ed] time away from his work detail to prepare legal documents to present to the court."  Plaintiff contends that these statements were fraudulent. However, these opinions are sufficiently accurate in consideration of the evidence presented by the parties.  FTC records and Plaintiff's own statements in his administrative grievance concerning the transfer reflect that Plaintiff had pending legal actions at that time.  FTC records reflect that Plaintiff frequently requested materials from the law library at FTC and that he requested to physically access the law library on at least four occasions in May and June of 2001.  Plaintiff also requested that the books in the basic law library be "updated" and he requested to be  "present" in the law library when copies of certain materials he requested were made by the law library staff.  Defendants' Exhibits to Supplement to Motion for Summary Judgment on Privacy Act Claim.  (Doc. # 298, Ex. 2).  During his confinement at FTC, Plaintiff filed a 28 U.S.C. § 2241 action in this Court on June 14, 2001, Patel v. Morris, Case No. CIV-01-911-T, and Plaintiff had another civil action pending against several federal correctional officials in the United States District Court for the District of Colorado, Patel v. Wooten, Case No. 96-cv-286-RPM (accessed through PACER on October 7, 2009).

Viewing the undisputed facts in the light most favorable to the Plaintiff, a reasonable jury would not find for the Plaintiff on his Privacy Act claim.  "The Privacy Act allows for amendment of factual or historical errors.  It is not, however, a vehicle for amending the

16

*judgments* of federal officials or others as those judgments are reflected in records maintained by federal agencies." <u>Kleiman v. Dep't of Energy</u>, 956 F.2d 335, 337-338 (D.C. Cir. 1992)(quotation omitted).   Plaintiff has challenged the judgment of FTC officials that Plaintiff should be transferred to provide him better access to law library resources at a traditional federal correctional facility.   There is no evidence that the FTC officials' statements in the transfer request memorandum concerning Plaintiff's behavior, medical restrictions, and the rationale for the transfer were made because the FTC officials were motivated by the desire to retaliate against Plaintiff for his requests for access to the law library and for medical care for his elbow injury.   Although Plaintiff surmises that an underlying retaliatory motive existed for the transfer request, the FTC officials stated on the face of the memorandum that Plaintiff's transfer to a traditional facility would allow Plaintiff greater access to a law library and therefore the transfer would better meet his needs, considering his frequent requests for physical access to the FTC main law library.   This stated intent, which was certainly viable under the evidence contained in the record, fails to demonstrate that a material issue of disputed fact exists regarding whether Defendants "acted willfully or intentionally in failing to maintain accurate records," a necessary element of Plaintiff's Privacy Act claim.   Therefore, Defendants are entitled to summary judgment with respect to this claim.

## RECOMMENDATION

Based on the foregoing findings, it is recommended that Defendants' Motion for

Summary Judgment on Privacy Act Claim (Doc. # 286) be granted and judgment be entered in favor of Defendants and against the Plaintiff.  Plaintiff is advised of his right to file an objection to this Supplemental Report and Recommendation with the Clerk of this Court by _____ October 29th _____, 2009, in accordance with 28 U.S.C. § 636 and LCvR 72.1.  The failure to timely object to this Supplemental Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Supplemental Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this _____ 9th _____ day of _____ October _____, 2009.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE